[No. E021856. Fourth Dist., Div. Two. May 26, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
JEREMY RAYMOND MALDONADO, Defendant and Appellant.

[No. E021904. Fourth Dist., Div. Two. May 26, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
PAUL HERNANDEZ ADAME et al., Defendants and Appellants.

**[Opinion certified for partial publication.\*]**

---

 \*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts I. A, II. A, B, C, E and III.

COUNSEL

Cliff Gardner, under appointment by the Court of Appeal, for Defendant and Appellant Paul Hernandez Adame.

Kevin C. McLean, under appointment by the Court of Appeal, for Defendant and Appellant Jeremy Raymond Maldonado.

Daniel E. Lungren and Bill Lockyer, Attorneys General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Garrett Beaumont, Robert M. Foster and Warren P. Robinson, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

WARD, J.—Defendants and appellants Paul Hernandez Adame and Jeremy Raymond Maldonado appeal after each was convicted of the first degree premeditated murder of Jose Canchola. Defendant Adame raises several issues concerning instructions on lesser offenses, corroboration of accomplice testimony, and the propriety of street gang enhancements. Defendant Maldonado joins in these contentions, and argues that (1) the court should have given voluntary manslaughter instructions, and (2) it was improper to use the testimony of an accomplice, while giving the accomplice favorable sentencing treatment. We find that none of the contentions has merit, and we affirm.

### FACTS AND PROCEDURAL HISTORY

Michael Moreno was a member of the West Side Rivas, a gang in west Riverside. In March of 1996, Moreno and five friends were in the Rubidoux area when they were attacked by several other young men. The attackers were members of a tagging crew known as "Born Ruthless." Moreno suffered numerous serious stab wounds in the attack and was hospitalized for several weeks.

Moreno was released from the hospital sometime around May 22, 1996. In the early morning hours of June 8, 1996, Moreno was riding with defendant Maldonado in defendant Maldonado's car. Defendant Maldonado, like Moreno, was a member of the West Side Riva gang. Defendant Maldonado saw Christina Guzman standing on a corner with several other young people. Defendant Maldonado recognized Guzman; he slowed down and called Guzman over to the car. One of the young men with Guzman yelled out

"Norwalk," which is the name of a gang. Moreno recognized Jose Canchola, the man who yelled "Norwalk," as one of the men who had attacked him in March. Canchola was a member of Born Ruthless.

Moreno told defendant Maldonado to drive on, and said that he recognized Canchola as one of the attackers. Defendant Maldonado asked if Moreno wanted to "do something about it." At first, Moreno said no, and indicated he could do nothing about it, because of his condition. Defendant Maldonado replied, "Look what they done to you," and said, "I'll do it." Both Moreno and defendant Maldonado decided to pick up defendant Adame, another West Side Riva gang member, so that they could return and take care of Canchola.

Defendant Maldonado drove to defendant Adame's house and picked him up. Defendant Adame had a gun with him. The three West Siders then went to defendant Maldonado's house, where he retrieved a gun. They drove toward the location where they had last seen Canchola and Guzman, and stopped about two blocks away. Moreno and defendant Maldonado changed seats; Moreno took the driver's seat, and Maldonado got into the front passenger seat. Moreno drove to the corner where they had seen Canchola earlier. Canchola was still there with another young man.

Defendants Maldonado and Adame got out of the car. Canchola and his companion approached with their hands behind their backs, as if they were hiding guns. Defendant Maldonado displayed his gun, however, and both Canchola and his companion began to run away. Defendant Maldonado chased Canchola around the car and shot at him three or four times. Two bullets struck Canchola, and he died at the scene.

While defendant Maldonado was chasing Canchola, defendant Adame was trying to unjam his gun. Defendants Maldonado and Adame got back into the car after the shooting, and Moreno drove away. Guzman, who was still close by, telephoned 911. She told the operator she had seen "Gauge's" car, and she had also seen "Mugsy" get out of the car. "Gauge" is defendant Maldonado's gang nickname; "Mugsy" is defendant Adame's gang nickname.

The prosecution presented evidence at trial that the killing was committed for the benefit of the West Side Riva gang.

Defendant Maldonado presented evidence in his defense. One of his high school teachers testified that, during the 1995-1996 school year, defendant

Maldonado had started out sitting in the back of the room with some West Side Riva gang members, but, as the year progressed, defendant Maldonado's grades improved and he began sitting closer to the instructor and distancing himself from the other gang members. In addition, defendant Maldonado's girlfriend testified that he had been with her until 12:15 a.m. on the night of the shooting. The shooting was reported to police at approximately 1:30 a.m. on June 8, 1996.

Moreno and defendants Adame and Maldonado were originally charged with Canchola's murder. Then, Moreno agreed to plead guilty to manslaughter, and to testify against defendants Adame and Maldonado.

Defendants Adame and Maldonado were charged by information with first degree premeditated murder (Pen. Code, § 187). The information alleged as to each defendant that a principal was armed with a firearm (Pen. Code, § 12022, subd. (a)(1)), and that each defendant had personally used a firearm in the commission of the offense (Pen. Code, § 12022.5, subd. (a)). The information also alleged as to each defendant that the crime was committed for the benefit of a criminal street gang (Pen. Code, § 186.22, subd. (b)(1)).

The jury found both defendants guilty of first degree premeditated murder, and found the firearm use and gang enhancements to be true. The court did not submit to the jury the question whether a principal was armed with a firearm.

The court sentenced each defendant to an indeterminate term of 25 years to life, consecutive to a determinate term of 13 years: 10 years for personal use of a firearm, plus 3 years for the gang enhancement.

Each defendant filed a timely notice of appeal.

ANALYSIS

I. *Defendant Maldonado's Appeal*[1]

A. *The Court Was Not Required to Instruct on Voluntary Manslaughter**

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

[1]Defendant Adame joins in the contentions raised in defendant Maldonado's brief. Our disposition of defendant Maldonado's claims is deemed applicable to both defendants.
 *See footnote, *ante,* page 588.

### B. *Moreno's Testimony Was Properly Admitted*

■ Defendant Maldonado next contends that it was improper to admit former codefendant Moreno's testimony against him, because Moreno's testimony was "bought" in exchange for lenient treatment, in violation of Penal Code section 132.5, subdivision (a).

The contention is without merit. Penal Code section 132.5 was enacted in 1994,[2] in response to the conduct of several potential witnesses in well-known, notorious or sensational criminal cases of the day; these witnesses had been selling their stories to the highest media bidder. The Legislature believed that the general weal was harmed by the media bidding wars over such stories; witnesses were less likely to cooperate with police investigation of crimes by withholding information in hopes of a lucrative media "exclusive," and the trials of those accused of crime could be rendered unfair by the specter of "bought" testimony which could be skewed, incomplete, or otherwise tainted by the influences of the media or money or both. Accordingly, the Legislature responded by enacting Penal Code section 132.5. Penal Code section 132.5, subdivision (a), provides in relevant part: "A person who is a witness to an event or occurrence that he or she knows, or reasonably should know, is a crime or who has personal knowledge of facts that he or she knows, or reasonably should know, may require that person to be called as a witness in a criminal prosecution shall not accept or receive, directly or indirectly, any payment or benefit in consideration for providing information obtained as a result of witnessing the event or occurrence or having personal knowledge of the facts."

Defendant Maldonado now argues that Moreno, an accomplice in the murder and an original codefendant on the charge, received an unlawful "payment or benefit" in violation of Penal Code section 132.5, because he provided his testimony in exchange for leniency, being allowed to plead guilty to manslaughter and receiving a sentence of 12 years.[3]

---

[2] There are two versions of Penal Code section 132.5. The versions are ordered differently but contain the same provisions that are pertinent here. (Compare Stats. 1994, ch. 869, § 3, with Stats. 1994, ch. 870, § 1.) For convenience, we shall refer to the text and numbering of the version enacted in Statutes 1994, chapter 869, section 3.

[3] We recognize that the 10th Circuit Court of Appeals in *U.S.* v. *Singleton* (10th Cir. 1998) 144 F.3d 1343 (*Singleton I*) held that granting leniency to a witness in exchange for testimony violated a federal statute prohibiting the giving of compensation or value for evidence. The

█ In construing Penal Code section 132.5, we are mindful of principles of interpretation, which caution against reading a statute so as to achieve absurd results, or results inconsistent with the apparent legislative intent. (*People* v. *Cruz* (1996) 13 Cal.4th 764, 782-783 [55 Cal.Rptr.2d 117, 919 P.2d 731].) █ The Legislature's concern in enacting Penal Code section 132.5 was manifestly to put a halt to the media bidding frenzy for the stories of witnesses in popular, sensational cases.[4] The Legislature would not have intended, in the same enactment, to do away with the common, well-established practice of plea bargaining in exchange for truthful testimony.

Penal Code section 132.5 expressly excepts from its terms "Lawful compensation provided to an informant by a prosecutor or law enforcement agency" (Pen. Code, § 132.5, subd. (e)(2)), and "Statutorily authorized rewards offered by governmental agencies for information leading to the arrest and conviction of specified offenders" (Pen. Code, § 132.5, subd. (e)(4)). It may be possible to construe plea bargains either as "Lawful compensation provided to an informant," or a "Statutorily authorized reward[]" to a witness, for purposes of Penal Code section 132.5.

Even if such a construction is not possible, the admission of Moreno's testimony does not require reversal. A person who accepts money for information may be found guilty of a misdemeanor, and may be required to disgorge the money received, as well as to pay a fine and/or be sentenced to a jail term. Penal Code section 132.5 provides no other penalties, however, for its violation, and is not an exclusionary rule.

To the contrary, article I, section 28, subdivision (d), the "Truth-in-Evidence" clause, of the California Constitution generally requires that all relevant evidence be admitted in a criminal proceeding, unless obtained in violation of the United States Constitution. (*In re Lance W.* (1985) 37 Cal.3d 873, 885-890 [210 Cal.Rptr. 631, 694 P.2d 744].) Penal Code section 132.5

---

court of appeals ordered a rehearing in bank, however, within days of the original issuance of *Singleton I.* The court of appeals in bank ruled in *U.S.* v. *Singleton* (10th Cir. 1999) 165 F.3d 1297 (*Singleton II*) that Congress did not intend the federal statute to invade the well-established prerogative of the sovereign to offer leniency in exchange for a witness's testimony. A petition for certiorari was filed with the United States Supreme Court on March 31, 1999 (Docket No. 98-8758). A multitude of cases has rejected the analysis in *Singleton I,* in favor of an analysis upholding the tradition of plea bargaining.

[4]See Fein, *Should Witnesses Be Allowed to Sell Their Stories Before Trial?,* Los Angeles Times (Aug. 22, 1994) Metro, part B, Op-Ed Desk.

We do not reach here the question of whether Penal Code section 132.5 is violative of First Amendment rights.

is a state statute; its violation is not a violation of the United States Constitution (*Clark* v. *City of Hermosa Beach* (1996) 48 Cal.App.4th 1152, 1180 [56 Cal.Rptr.2d 223] [" 'As has often been stated, "[t]he violation of a state statute does not automatically give rise to a violation of rights secured by the Constitution." ' [Citations.]"]), and thus a witness's testimony, even if unlawfully compensated under Penal Code section 132.5, must be admitted under the Truth-in-Evidence provision.

Moreover, plea bargaining is not inconsistent with Penal Code section 132.5. ■ Plea bargaining has a long history in the criminal justice system. Plea bargaining is a practice that is well circumscribed by safeguards to assure that testimony does not violate an accused's right to a fair trial. " ' "[A] defendant is denied a fair trial if the prosecution's case depends substantially on accomplice testimony and the accomplice witness is placed, either by the prosecution or by the court, under a strong compulsion to testify in a particular fashion." . . . Thus, when the accomplice is granted immunity subject to the condition that his testimony substantially conform to an earlier statement given to police . . . or that his testimony result in defendant's conviction . . . the accomplice's testimony is "tainted beyond redemption" and its admission denies defendant a fair trial. On the other hand, although there is a certain degree of compulsion inherent in any plea agreement or grant of immunity, it is clear that an agreement requiring only that the witness testify fully and truthfully is valid.' " (Italics omitted.) (*People* v. *Sully* (1991) 53 Cal.3d 1195, 1216-1217 [283 Cal.Rptr. 144, 812 P.2d 163].)

■ The courts have thus already determined, by long-standing precedent, that the provision of a plea bargain in exchange for truthful testimony, is not such an untoward "compensation" that the testimony will render the accused's trial unfair. Penal Code section 132.5 addresses the same concern, fairness, but in a different context: the newly burgeoning practice of selling witness statements to the highest media bidder, largely by witnesses other than plea-bargaining codefendants.

Here, defendant Maldonado has not argued that Moreno's plea bargain did anything other than require him to testify truthfully. Moreno's testimony was thus not within the intended scope of Penal Code section 132.5.

Moreno's testimony was properly admitted.

II. *Defendant Adame's Appeal*[5]

A.-C*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

D. *Corroboration of Accomplice Testimony Was Not Required to Find the Gun Use Enhancement True*

 Defendant Adame contends the gun use enhancement must be stricken because the jury was not instructed that Moreno's testimony as to the enhancement required corroboration, and because there was no independent evidence that he had personally used a firearm.

This point appears to present an issue of first impression.

Penal Code section 1111, requiring corroboration, applies by its terms to "conviction" of an "offense." An enhancement for personal use of a firearm is not an "offense," and a true finding on an enhancement allegation is not a "conviction." (*People* v. *Morris* (1988) 46 Cal.3d 1, 16 [249 Cal.Rptr. 119, 756 P.2d 843] ["Firearm enhancements, like special circumstances, are not substantive crimes"].) We conclude, therefore, that accomplice corroboration was not required to prove the gun use allegation.

*People* v. *Adcox* (1988) 47 Cal.3d 207, 247-248 [253 Cal.Rptr. 55, 763 P.2d 906], and *People* v. *Espinoza* (1979) 99 Cal.App.3d 44, 48-49 [159 Cal.Rptr. 803], are not apt. In each of these cases, the court decided that the jury had been adequately instructed to consider whether the accomplice evidence establishing the enhancement, or a special circumstance, was properly corroborated. Incidentally in each case the court also found adequate corroboration.

The *Adcox* court relied in part on a special statute relating to special circumstance findings: "Section 190.4, subdivision (a), provides in relevant

---

[5]Defendant Maldonado has expressly joined in any assignments of error raised by defendant Adame which could also apply to him. This portion of the appeal addresses the issues as to both defendants.

*See footnote, *ante*, page 588.

part: 'Wherever a special circumstance requires proof of the commission or attempted commission of a crime, such crime shall be charged and proved pursuant to the general law applying to the trial and conviction of the crime.' " (*People* v. *Adcox, supra,* 47 Cal.3d 207, 247-248.) Thus, the court held that the accomplice corroboration instructions did not differentiate between the guilt verdict and the other findings; the jury would simply assume that the corroboration requirement applied to all findings. The court was not called upon to determine whether accomplice corroboration is required to return a true finding on a firearm enhancement.

■ Cases are not authority for points not necessary to their decision. (*In re Clifford C.* (1997) 15 Cal.4th 1085, 1093-1094, fn. 6 [64 Cal.Rptr.2d 873, 938 P.2d 932] [" ' "an opinion is not authority for a proposition not therein considered" ' "].)

■ Accomplice testimony must be corroborated to avoid the evil of an accused being convicted solely on the testimony of a coperpetrator who has a motive to place all the blame on the accused. Independent evidence must therefore connect the accused to the commission of the substantive offense, " 'in such a way as reasonably may satisfy a jury that the accomplice is telling the truth.' " (*People* v. *Bunyard* (1988) 45 Cal.3d 1189, 1206 [249 Cal.Rptr. 71, 756 P.2d 795].) The independent evidence need not establish all the elements of the underlying offense; once the corroboration sufficiently establishes the accomplice's believability, the accomplice's evidence may establish many facts or details not related in the independent testimony.

■ We conclude, therefore, that the requirement of accomplice corroboration to convict on the underlying offense is all that Penal Code section 1111 requires; even if a true finding of a gun use enhancement depends exclusively upon the testimony of an accomplice, the corroboration requirement has already satisfied the statutory purposes of establishing the credibility of the accomplice while connecting the particular defendant to the commission of the crime. Unless the defendant has been properly convicted of the underlying offense under corroborated accomplice testimony, the question of personal use of a firearm for enhancement purposes never arises. But when a defendant has already been found guilty of the underlying offense, the accomplice's credibility as to additional details of the crime, such as which participant used a gun, has at that point been supported by independent corroboration connecting the defendant to the commission of the crime. There is no reason why the trier of fact should not then believe the accomplice's evidence as to the detail of gun use without requiring further specific independent corroboration on that point.

E. *The Street Gang Enhancements Are Constitutional**

. . . . . . . . . . . . . . . . . . . . . . . . . . .

III. *Correction of Abstract of Judgment**

. . . . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

We order the abstract of judgment corrected as to each defendant, to strike the three-year term under Penal Code section 186.22, and to add the specification that each defendant must serve a minimum of fifteen calendar years on the indeterminate life term before he is eligible for parole.

In all other respects, the judgments are affirmed.

Ramirez, P. J., and Gaut, J., concurred.

The petition of all appellants for review by the Supreme Court was denied September 1, 1999.

---

*See footnote, *ante*, page 588.