Filed 12/10/21  P. v. Adame CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E074687 |
| v. | (Super.Ct.No. CR69121) |
| PAUL HERNANDEZ ADAME, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  John D. Molloy, Judge. Affirmed.

Correen Ferrentino, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina, Lynne G. McGinnis and Kelley Johnson, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant and appellant Paul Hernandez Adame appeals the Riverside County Superior Court's summary denial of his petition for resentencing made pursuant to section 1170.95 of the Penal Code.[1]  We affirm.

## BACKGROUND

*1. The circumstances leading to defendant's conviction*

The background leading up to defendant's petition for resentencing is taken from our opinion issued in the appeal from the judgment taken by defendant and codefendant Jeremy Raymond Maldonado.  (*People v. Maldonado* (1999) 72 Cal.App.4th 588, 591-599 (*Maldonado*).)  A copy of the opinion is included in the record on appeal.

Michael Moreno was a member of the West Side Rivas, a gang in west Riverside.  In March 1996, Moreno and five friends were in the Rubidoux area when they were attacked by several other young men from another gang, Born Ruthless.  Moreno suffered numerous serious stab wounds in the attack and was hospitalized for several weeks.

In June 1996, shortly after Moreno was released from the hospital, he and Maldonado were riding in Maldonado's car.  Maldonado was also a member of the West Side Riva gang.  Along the way, Moreno recognized Jose Canchola, one of the Born Ruthless members who had attacked him.  Moreno told Maldonado, who asked if Moreno wanted to "do something about it."  At first, Moreno said no, and indicated he could do nothing about it, because of his condition.  Maldonado replied, "Look what they done to you," and said,

---

[1]  All further statutory references are to the Penal Code.

"I'll do it." Both Moreno and Maldonado decided to pick up defendant, another West Side Riva gang member, so that they could return and take care of Canchola.

They picked up defendant, who had a gun with him. The three West Siders then went to Maldonado's house, where he retrieved a gun. They drove to the location where they had earlier seen Canchola and found him still there. Another man was with him.

Maldonado and defendant got out of the car, and Maldonado displayed his gun. When Canchola and his companion began to run away, Maldonado chased Canchola around the car and shot at him three or four times. Two bullets struck Canchola, and he died at the scene.

While Maldonado was chasing Canchola, defendant was trying to unjam his gun. Maldonado and defendant got back into the car after the shooting, and Moreno drove away.

Moreno, Maldonado, and defendant were arrested. Moreno agreed to plead guilty to manslaughter and to testify against Maldonado and defendant, who were charged with killing Canchola willfully, unlawfully, and with malice aforethought in violation of section 187. The information also alleged as to defendant and Maldonado that a principal was armed with a firearm (§ 12022, subd. (a)(1)), that they each had personally used a firearm in the commission of the offense (§12022.5, subd. (a)), and that each of them committed the crime for the benefit of a criminal street gang (§186.22, subd. (b)(1)).

The jury found both defendant and Maldonado guilty of first degree premeditated murder, and found the firearm use and gang enhancements to be true. The court did not submit to the jury the question whether a principal was armed with a firearm.

3

The court sentenced defendant and Maldonado to indeterminate terms of 25 years to life, consecutive to a determinate term of 13 years consisting of 10 years for personal use of a firearm, plus three years for the gang enhancement. Maldonado and defendant appealed the judgment. We ordered correction of a mistake in the abstract of judgment and affirmed.

*2. Defendant's petition for resentencing*

On January 1, 2019, Senate Bill No. 1437 became effective. (Stats. 2018, ch. 1015.) That measure amended sections 188 and 189 to eliminate the natural and probable consequences doctrine as it relates to murder and to limit the reach of the felony murder rule. (Stats. 2018, ch. 1015, §§ 2, 3.)

In February 2019, defendant filed a petition pursuant to section 1170.95 seeking resentencing under the new laws.

Upon receipt of the petition, the trial court set the matter for a status conference and counsel was appointed for defendant. The People filed a response, arguing the court had no jurisdiction to hear the petition because Senate Bill No. 1437 violated the California Constitution. They also argued defendant would not be entitled to relief because this court's opinion established he directly aided and abetted Maldonado's killing of Canchola and he could still be convicted under the laws as amended by Senate Bill No. 1437. Defendant filed a response, disagreeing with the People's argument that the amendments are unconstitutional.

The trial court stayed the status conference until resolution of the constitutionality issue by any binding Court of Appeal decision. In late 2019, Division One of this court

4

found the legislation did not violate the constitution. (*People v. Superior Court* (*Gooden*) (2019) 42 Cal.App.5th 270, 289.)

Defendant was not present but was represented by counsel on January 31, 2020, when the court summarily denied/dismissed the petition. Defendant appealed.

## DISCUSSION

Defendant argues his pleading complied with the statutory requirements and, therefore, the trial court was required to issue an order to show cause. He also claims the court instead improperly relied on our opinion in defendant's appeal from the judgment when it dismissed defendant's petition. The People agree the court incorrectly engaged in factfinding when it denied the petition but argues the error was harmless. We find no error and affirm.

*1. Senate Bill No. 1437 limits the scope of the felony-murder rule and provides a procedure for recall of certain sentences*

In 2018, the Legislature eliminated the natural and probable consequences doctrine as it relates to murder and narrowed the scope of the felony-murder rule by passage of Senate Bill No. 1437, effective January 1, 2019. (Stats. 2018, ch. 1015.) The bill substantively amended sections 188 and 189 to ensure liability for murder would be limited to persons who (i) are the actual killer, (ii) are not the actual killer but, with the intent to kill, the person aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree, or (iii) are a major participant in the

5

underlying felony and acted with reckless indifference to human life as described in section 190.2, subdivision (d).  (*People v. Lewis* (2021) 11 Cal.5th 952, 957. (*Lewis*).)

The bill also added section 1170.95, which establishes the procedure for persons previously convicted of felony murder or of murder under a natural and probable consequences theory to petition to have their sentence vacated and to be resentenced if they could not be convicted under the law as amended.  (*Lewis*, *supra*, 11 Cal.5th at p. 959.)  The petition must be filed in the sentencing court and aver:  (i) the complaint, information, or indictment filed against the petitioner allowed the prosecution to proceed under a theory of felony murder or a murder due to natural and probable consequences; (ii) the petitioner was convicted of first or second degree murder either after a trial or after acceptance of a plea offer in lieu of a trial in which the petitioner could have been convicted of first or second degree murder; and (iii) the changes made by Senate Bill No. 1437 to sections 188 and 189 would now foreclose petitioner from being convicted of first or second degree murder.  (§ 1170.95, subd. (b)(1); *Lewis*, *supra*, 11 Cal.5th at pp. 959-960.)  Petitioner is also required to state whether appointment of counsel is requested.  (*Lewis*, at p. 960.)

If the petition complies with the aforementioned requirements, the court must appoint counsel and assess if the petitioner has made a prima facie showing for relief in accordance with subdivision (c) of section 1170.95.  (*Lewis*, *supra*, 11 Cal.5th at pp. 960, 962-963.) The prosecutor must file and serve a response to the petition within 60 days after the petition was served, and the petitioner may file and serve a reply within 30 days after the prosecutor's response is filed.  (§1170.95, subd. (c); *Lewis*, at p. 961.)  If the court

6

determines a petitioner made a prima facie showing that he or he is entitled to relief, it must issue an order to show cause. (*Lewis*, at p. 961.)

In making the determination whether the petitioner has made a prima facie showing, the court will necessarily be informed by the record of conviction, which will allow the court to distinguish petitions with potential merit from those that are clearly lacking merit. (*Lewis*, *supra*, 11 Cal.5th at pp. 970-971.) Although the court may not engage in factfinding involving the weighing of evidence or exercise of its discretion, it may consider the conviction record, including the court's own documents and appellate opinion. (*Id.* at pp. 971-972.) If the record of conviction contains facts refuting the petition's allegations, then the court is justified in making a finding that the petition does not pass prima facie muster. (*Id.* at p. 971.)

2. *The trial court properly dismissed defendant's petition*

Defendant argues the trial court was required to issue an order to show cause because it was apparent from the fact the parties had filed briefs that the court had passed the stage of prima facie review of the petition. The People agree, stating "[b]y setting a status conference, appointing counsel for [defendant], and soliciting briefing," the court had signaled that it had not found defendant ineligible for relief as a matter of law and was, therefore, not entitled "at that stage . . . [to make] its own findings of facts." The parties misapprehend the operation of section 1170.95 and the stage of the proceedings in which the trial court dismissed the petition.

As explained, *ante*, an order to show cause is not authorized by section 1170.95 unless the trial court determines a defendant has made a prima facie showing of entitlement for relief. (§ 1170.95, subds. (c), (d); *Lewis*, *supra*, 11 Cal.5th at p. 960.) That determination is not made until after the People have filed a response to a facially sufficient petition and the defendant has had an opportunity to reply to that response. Here, the People responded to the petition and defendant replied. Thereafter, the court found defendant had not made a prima facie showing of relief, thereby foreclosing the need to issue an order to show cause.

Defendant also argues the court improperly bottomed its decision to dismiss solely on the People's argument that this court's opinion in the appeal from the judgment made clear defendant was a direct aider and abettor with intent to kill. He argues reliance on the opinion constituted improper factfinding calling for reversal of the dismissal order and remand with instructions to issue an order to show cause. The People agree the court improperly engaged in factfinding but posit the error was harmless because the jury instructions establish defendant's conviction was not obtained on a theory of felony murder or natural and probable consequences. We do not agree with the parties' claims of error.

First, the court did not state the reasons for its decision, and there is no requirement that it do so. Second, an appellate opinion is generally considered part of the record of conviction upon which the trial court may rely so long as it does not engage in factfinding involving weighing of evidence or exercise of discretion. (*Lewis*, *supra*, 11 Cal.5th at p. 972.) Here, if the court did rely solely on our opinion in concluding the record of conviction

8

rebutted the petition's averments, it was not error. The opinion affirms that defendant was charged and convicted as principal in a first degree premeditated murder of a rival gang member and could not, therefore, be eligible for relief under section 1170.95.

The parties cannot find support for their improper factfinding argument in the case they cite, *People v. Drayton* (2020) 47 Cal.App.5th 965 (*Drayton*), disapproved on other grounds by *Lewis*, *supra*, 11 Cal.5th at page 963. There, a couple and their teenage daughter awoke in the middle of the night to find Drayton and his three codefendants in their home. (*Id.* at p. 968.) In the course of the robbery, two of the codefendants killed the father. (*Id.* at pp. 968-969.) In March 1992, Drayton pled guilty to a charge of murder, admitting that he had entered the victim's residence with the intent to commit theft and a human being was killed and that he had a 32-caliber pistol in his possession. (*Id.* at p. 969.)

After Senate Bill No. 1437 became effective, Drayton filed a section 1170.95 petition for resentencing. (*Drayton*, *supra*, 47 Cal.App.5th at p. 969.) The district attorney implicitly acknowledged that Drayton had been convicted on a felony murder theory but argued he was not eligible for 1170.95 relief because he could still be convicted of murder as a major participant in the underlying robbery and burglary who had shown reckless indifference to human life under the principles articulated in *People v. Banks* (2015) 61 Cal.4th 788. (*Drayton*, at p. 970.) The trial court conducted a hearing on Drayton's petition and, without hearing argument or taking evidence, expressed agreement with the People's position. It found Drayton ineligible for resentencing because the particularly egregious

9

facts of the case supported a finding Drayton was a major participant who acted with reckless indifference to human life. (*Id.* at pp. 971-972.)

The Sixth District reversed the trial court's dismissal because the court's conclusions were improperly based on its own assessment of the facts instead of upon a prior finding by a factfinder or upon an admission by Drayton that he was a major participant who had acted with reckless indifference to human life.

The present case is decisively distinguishable from *Drayton.* As discussed *ante*, defendant was not charged or convicted on a theory of felony murder or natural and probable consequences, and a jury found him guilty of premeditated first degree murder.

Moreover, even if the court had relied solely on our opinion in the appeal from the judgment and engaged in improper factfinding, the error was harmless. In addition to our opinion, the documents comprising the record of conviction also serve to rebut defendant's assertions in the petition and establishes his ineligibility for relief as a matter of law.[2] The operative felony complaint and information (which are included in the record on appeal) as well as the jury instructions and verdict forms (included in the judicially noticed record in the appeal from the judgment) demonstrate defendant was charged with and convicted of premeditated murder in the first degree without involvement of the felony murder rule or the

---

[2] The People requested we judicially notice the record in defendant's appeal from the judgment (case No. E021904), which includes the jury instructions referred to by the People in their responsive brief. Defendant opposed the request on the grounds the record was not reviewed by the trial court and, is therefore, not relevant to the issue whether his petition stated a prima facie case for relief. We reserved ruling for consideration with the appeal. As explained *ante,* a trial court is necessarily informed by the record of conviction and there is no reason to suppose the trial court was not so informed here. The request is granted pursuant to Evidence Code sections 452, subdivision (d), and 459, subdivision (a).

natural and probable consequences doctrine, that the jury was not given instructions as to either of those theories and that it was instructed on the concepts of aiding and abetting as well as malice aforethought.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ                          
P. J.

We concur:

MILLER                          
J.

FIELDS                          
J.