Filed 3/2/22  P. v. Pierson CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE, | C093163 |
| Plaintiff and Respondent, | (Super. Ct. No. 19F1311) |
| v. | |
| MARLIN JUAN PIERSON, | |
| Defendant and Appellant. | |

A jury found defendant Marlin Juan Pierson guilty of first degree burglary.  The trial court sentenced him to 25 years to life under the Three Strikes law.  On appeal, defendant claims his conviction for burglary should be reversed because there was insufficient evidence, independent of accomplice testimony, to tie him to the offense.  He also argues that the trial court erred in denying his motion to dismiss his prior strike conviction under *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*).  We affirm.

1

FACTUAL AND PROCEDURAL BACKGROUND

Maria R. testified that, on the morning of the burglary, she propped her garage door open with a bucket as she left to take her son to school. The door leading into her apartment from the garage was closed but unlocked. When she returned, she saw a white SUV-type vehicle in the parking lot. She saw a person wearing "something like a ski mask," going through the passenger floor or glove compartment area. She did not pay too much attention; it was cold that morning and she thought it was a new tenant. As she opened her garage door, she heard her front door "being ruffled with." She thought it was her husband, Anthony R., who was actually asleep. When Anthony woke up, they realized someone else must have been in the house. Maria noticed her Apple watch was missing and her couch had been "messed with." She called the police and she and Anthony began tracking her watch through her iPhone.

During this process, Anthony and Maria met with Officer Ryan Ellis at a convenience store. While Anthony went home, Maria and Officer Ellis tracked the watch to a nearby Walmart, where Maria noticed the same white SUV-type vehicle she had seen in her parking lot that morning. Defendant and codefendant Mike Leyva were walking away from the vehicle. Officer Ellis detained defendant and Leyva and found an Apple watch in Leyva's back pocket.

Maria recognized defendant as a person who used to visit the apartment next to hers. Anthony also testified he knew defendant "a little bit" because his former neighbor is a relative of defendant and Anthony had seen defendant "maybe a handful" of times.

Defendant denied knowledge of a burglary but admitted he was at the apartment complex and wearing a ski mask earlier that day.

Codefendant Leyva testified that defendant asked him to commit the burglary. Defendant told Leyva that the R.'s were making "ghost guns," guns without serial numbers, in the apartment and he wanted to get them. Leyva said he and defendant spoke about this weeks prior and, on the morning of the incident, defendant drew a map of the

2

layout of the apartment and outfitted them both with a mask and bulletproof vest. Defendant told Leyva that the residents leave the garage door open, and Leyva planned to enter and exit through the open garage.

Leyva admitted that he entered the residence and when he noticed Maria returning, he took an Apple watch and charger, left through the front door, then drove with defendant to defendant's house. At defendant's house, they took off the vests and masks, then went to Walmart to buy a phone card. Defendant asked whether he "got anything" and Leyva answered in the negative; Leyva was not sure whether he told defendant about the watch.

Leyva testified that he was subsequently charged in this matter and entered an open plea of guilty; he had not been sentenced at the time of his testimony against defendant. He admitted that he hoped to receive a favorable recommendation from the prosecution regarding his sentence but stated he was testifying because of his own desire to tell the truth. Leyva also told the jury that he agreed to commit the burglary because defendant was "a little intimidating" and explained defendant was roughing up a girlfriend, with whom Leyva was friends.

The prosecution charged defendant with first degree burglary, with the allegation that another person, other than an accomplice, was present during the commission of the offense. (Pen. Code, §§ 459, 462.)[1] The prosecution also alleged that defendant suffered two prior serious felonies for purposes of the Three Strikes law and sentence enhancements. (§§ 1170.12, 667, subd. (a).) The jury found defendant guilty of first degree burglary and found true the allegation that a person was present during the commission of the offense. In a separate hearing, the trial court found true the prior

---

[1] Undesignated statutory references are to the Penal Code.

3

strike allegations. The trial court denied defendant's *Romero* motion and sentenced defendant to 25 years to life under the Three Strikes law.

DISCUSSION

I

*Accomplice Testimony*

Defendant argues that there is insufficient corroboration of Leyva's testimony such that there is no independent evidence connecting defendant to the burglary. As a result, defendant argues, Leyva's testimony must be discounted and, without it, there is insufficient evidence to support defendant's conviction. The People disagree and maintain there was sufficient evidence to corroborate Leyva's accomplice testimony and substantial evidence to support the conviction. We agree with the People.

Section 1111 prohibits a conviction based "upon the testimony of an accomplice unless it [is] corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof. [¶] An accomplice is hereby defined as one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given." (§ 1111.) This definition encompasses principals to the crime, including aiders and abettors and coconspirators. (*People v. Manibusan* (2013) 58 Cal.4th 40, 93.) For purposes of review, the accomplice corroboration requirement is an exception to the substantial evidence rule. (*People v. Romero and Self* (2015) 62 Cal.4th 1, 32.)

"To corroborate the testimony of an accomplice, the prosecution must present 'independent evidence,' that is, evidence that 'tends to connect the defendant with the crime charged' without aid or assistance from the accomplice's testimony. [Citation.] Corroborating evidence is sufficient if it tends to implicate the defendant and thus relates to some act or fact that is an element of the crime. [Citations.] ' "[T]he corroborative evidence may be slight and entitled to little consideration when standing alone." ' "

4

(*People v. Avila* (2006) 38 Cal.4th 491, 562-563.) The corroborating evidence may also be entirely circumstantial (*People v. Lewis* (2001) 26 Cal.4th 334, 370) and " ' "need not corroborate the accomplice as to every fact to which he testifies but is sufficient if it does not require interpretation and direction from the testimony of the accomplice yet tends to connect the defendant with the commission of the offense in such a way as reasonably may satisfy a jury that the accomplice is telling the truth." ' " (*People v. Davis* (2005) 36 Cal.4th 510, 543; *People v. Szeto* (1981) 29 Cal.3d 20, 27.) "[U]nless a reviewing court determines that the corroborating evidence should not have been admitted or that it could not reasonably tend to connect a defendant with the commission of a crime, the finding of the trier of fact on the issue of corroboration may not be disturbed on appeal." (*People v. Falconer* (1988) 201 Cal.App.3d 1540, 1543; see also *People v. McDermott* (2002) 28 Cal.4th 946, 986.)

In determining whether an accomplice's testimony is sufficiently corroborated, we review the evidence without considering the accomplice's testimony. (*People v. Jones* (2018) 26 Cal.App.5th 420, 440, citing *People v. Perez* (2018) 4 Cal.5th 421, 452-453 & *People v. Rodriguez* (2018) 4 Cal.5th 1123, 1128.) We also consider the entire conduct of the defendant and the accomplice-witnesses, their relationships with each other, and their acts during and after the commission of the crime. (*People v. Romero and Self, supra*, 62 Cal.4th at pp. 32-33; *People v. Narvaez* (2002) 104 Cal.App.4th 1295, 1305.) As this court has held, "proof of association in such close proximity in both time and place as to connect [the defendant] with participation" in the crime can be sufficient corroboration. (*People v. Davis* (1962) 210 Cal.App.2d 721, 729.)

Contrary to defendant's claim, the evidence tends to connect defendant with the commission of the offense, such that section 1111 was satisfied. Specifically, defendant's previous visits with family members who lived next to the R.'s, the relationship between the codefendants, as well as their temporal and geographical proximity around the commission of the burglary all serve to corroborate Leyva's

5

testimony.  Defendant admitted he was in the apartment complex wearing a ski mask on the morning of the burglary.  Maria saw someone wearing a ski mask and sitting in a white vehicle at the apartment complex.  Not long after the burglary, defendant was with Leyva near the same white vehicle; Leyva still had the Apple watch in his possession.  The presence of the white vehicle at both locations, combined with defendant's admission that he wore a ski mask while at the apartment complex that morning, and Maria's sighting of a person in a ski mask in the white vehicle, is circumstantial evidence that defendant was present at the apartment complex during the burglary and that he and Leyva traveled together to each location.  Further, the codefendants appeared to voluntarily remain together after the burglary, which indicates a relationship, and there was association in "close proximity in both time and place" to the contested charge. (*People v. Davis, supra*, 210 Cal.App.2d at p. 729.)  Additionally, defendant's act of wearing a ski mask while the robbery occurred nearby suggests he did not want his face visible during that time.  Under these circumstances, the logical inference is that defendant intended to aid the commission of the burglary.  Consequently, the independent evidence tended to connect defendant to the charged offense, such that Leyva's believability was established.  (Cf. *In re Gary F.* (2014) 226 Cal.App.4th 1076, 1081 [a reasonable trier of fact could infer that the minor and burglar were companions acting in concert according to a common plan such that the minor had foreknowledge of the burglary and harbored the intent to encourage or facilitate it, where the minor was previously seen riding bikes with the burglar and on the day of the burglary the minor was waiting outside the house when the burglar emerged].)

Nevertheless, defendant contends that because Leyva's testimony was not fully corroborated, it must be discounted and there was insufficient independent evidence to support his conviction.  Contrary to defendant's assertions, the "independent evidence need not establish all the elements of the underlying offense; once the corroboration sufficiently establishes the accomplice's believability, the accomplice's evidence may

6

establish many facts or details not related in the independent testimony." (*People v. Maldonado* (1999) 72 Cal.App.4th 588, 598.)  Having determined that the independent evidence established Leyva's believability, we reject defendant's contention that Leyva's testimony must be discounted.  We also necessarily reject his claim that there is insufficient evidence to support his conviction, as the claim is wholly reliant on his belief that Leyva's testimony was uncorroborated.  Accordingly, we affirm the judgment.

## II

### *Denial of Romero Motion*

Defendant contends the trial court abused its discretion in refusing to strike his prior serious felony conviction under the Three Strikes law, as he is outside the spirit of the law.  We disagree.

### A.  *Additional Background*

The prosecution alleged defendant suffered two prior strike convictions:  a first degree robbery conviction in 2014 (§ 211) and a second degree robbery conviction in 2007 (§ 211).  Prior to sentencing, defendant requested that the trial court strike a prior strike conviction under section 1385 and *Romero, supra*, 13 Cal.4th 497.  Defendant argued that while the current offense was serious and violent, he did not personally enter the residence, which minimized his culpability.  He also argued his strike convictions were remote in time; they occurred six and 13 years prior to the instant conviction. During this "wash out" period, defendant argues, he only suffered two nonserious, nonviolent convictions.  Defendant maintains that he has been gainfully employed and, if granted probation, he would have full support of his family to continue his rehabilitation efforts including drug treatment.

The trial court denied defendant's request.  Weighing the nature and circumstances of the offense, the trial court acknowledged that defendant did not go into the house during the burglary, which was a factor in mitigation, but noted the real target of the offense—to steal ghost guns—was a much more serious matter than the theft of the

7

watch.  Additionally, the trial court found that the planning of the burglary was sophisticated and required defendant's knowledge regarding the burglarized family's routines.  The trial court also surmised that defendant purposefully sent Leyva into the residence in an effort to reduce his own liability for the offense, given defendant's status as a recidivist.  Reviewing the history and seriousness of defendant's criminal history, the trial court noted that defendant was repeatedly placed on probation but nevertheless continued his criminality and did not spend much time in the community between committing his two prior strike convictions for robbery.  The trial court gave defendant credit for his behavior during his most recent parole:  defendant was working, had clean drug tests, completed his programs and education, and had earned the trust of some "very good people."  However, the trial court ultimately found that defendant's background and character demonstrated 18 years of failed probation and repeated felony convictions and that defendant fell within the spirit of the Three Strikes law.

B.   *Analysis*

While the trial court has the power to dismiss a strike conviction under section 1385 (*Romero, supra*, 13 Cal.4th at pp. 529-530), an appellate court will not disturb the trial court's refusal to dismiss a strike absent an abuse of discretion.  (*People v. Carmony* (2004) 33 Cal.4th 367, 375.)  "[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it."  (*Id.* at p. 377.)  "Discretion is also abused when the trial court's decision to strike or not to strike a prior is not in conformity with the 'spirit' of the law."  (*People v. Philpot* (2004) 122 Cal.App.4th 893, 905.)  Circumstances where a defendant falls outside the spirit of the three strikes scheme must be extraordinary, where no reasonable person could disagree.  (*Carmony*, at p. 378.)

Defendant argues that the trial court abused its discretion in denying his *Romero* motion when it relied on Leyva's uncorroborated testimony of defendant's involvement and there was insufficient evidence to otherwise support defendant's conviction.  As we

have concluded that the corroboration requirement was satisfied, establishing the credibility of the accomplice while connecting the particular defendant to the commission of the crime, it was not an abuse of discretion to rely on evidence provided by Leyva in denying defendant's *Romero* motion. (Cf. *People v. Maldonado, supra*, 72 Cal.App.4th at p. 598 [where the corroboration requirement has already established the credibility of the accomplice, the court may rely on the accomplice's evidence as to sentencing issues regarding a firearm enhancement].)

Defendant also claims that the trial court failed to sufficiently weigh his efforts at rehabilitation and instead focused on the need for punishment and incarceration. We disagree. The trial court noted that defendant has recently made significant strides toward becoming a productive member of society. However, the court concluded that recent change of behavior, lasting several months, was not outweighed by years of criminality that included the commission of multiple strike offenses.

Given defendant's criminal history, prior strike convictions, and current conviction for first degree residential burglary, we cannot say the trial court's decision to deny defendant's *Romero* motion was irrational or arbitrary. Nor can we agree that defendant's circumstances are so extraordinary such that he falls outside the spirit of the Three Strikes law. Despite previous placement on probation, he has continued to engage in illegal activity and has earned convictions for weapons possession, and convictions for first and second degree robbery. Defendant falls within the three strikes scheme by virtue of his prior strikes and remains there by his continued criminality. As such, the trial court's decision to not dismiss defendant's prior strike does not constitute an abuse of its discretion.

DISPOSITION

We affirm the judgment.

/s/
RAYE, P. J.

We concur:

/s/
HULL, J.

/s/
KRAUSE, J.